Justice Thomas,
with whom Justice Scalia joins, dissenting.
Petitioner essentially asks this Court to second-guess the fact-based determinations of the Louisiana courts as to the reasons for a prosecutor’s decision to strike two jurors. The evaluation of a prosecutor’s motives for striking a juror is at bottom a credibility judgment, which lies “ ‘peculiarly within a trial judge’s province.’” Hernandez v. New York, 500 U. S. 352, 365 (1991) (plurality opinion) (quoting Wainwright v. Witt, 469 U. S. 412, 428 (1985)); Hernandez, supra, at 372 (O’Connor, J., concurring in judgment); ante, at 477. “[I]n the absence of exceptional circumstances, we [should] defer to state-court factual findings.” Hernandez, 500 U. S., at 366 (plurality opinion). None of the evidence in the record as to jurors Jeffrey Brooks and Elaine Scott demonstrates that the trial court clearly erred in finding they were not stricken on the basis of race. Because the trial court’s determination was a “permissible view of the evidence,” id., at 369, I would affirm the judgment of the Louisiana Supreme Court.
The Court begins by setting out the “deferential standard,” ante, at 479, that we apply to a trial court’s resolution of a Batson v. Kentucky, 476 U. S. 79 (1986), claim, noting that we will overturn a ruling on the question of discriminatory intent only if it is “clearly erroneous,” ante, at 477. Under this standard, we “will not reverse a lower court’s *487 finding of fact simply because we would have decided the case differently.” Easley v. Cromartie, 532 U. S. 234, 242 (2001) (internal quotation marks omitted). Instead, a reviewing court must ask “whether, ‘on the entire evidence,’ it is ‘left with the definite and firm conviction that a mistake has been committed.’” Ibid, (quoting United States v. United States Gypsum Co., 333 U. S. 364, 395 (1948)).
The Court acknowledges two reasons why a trial court “has a pivotal role in evaluating Batson claims.” Ante, at 477. First, the Court notes that the trial court is uniquely situated to judge the prosecutor’s credibility because the best evidence of discriminatory intent “ ‘often will be the demeanor of the attorney who exercises the challenge.’” Ibid, (quoting Hernandez, supra, at 365 (plurality opinion)). Second, it recognizes that the trial court’s “firsthand observations” of the juror’s demeanor are of “grea[t] importance” in determining whether the prosecutor’s neutral basis for the strike is credible. Ante, at 477.
The Court’s conclusion, however, reveals that it is only paying lipservice to the pivotal role of the trial court. The Court second-guesses the trial court’s determinations in this case merely because the judge did not clarify which of the prosecutor’s neutral bases for striking Mr. Brooks was dis-positive. But we have never suggested that a reviewing court should defer to a trial court’s resolution of a Batson challenge only if the trial court made specific findings with respect to each of the prosecutor’s proffered race-neutral reasons. To the contrary, when the grounds for a trial court’s decision are ambiguous, an appellate court should not presume that the lower court based its decision on an improper ground, particularly when applying a deferential standard of review. See Sprint/United Management Co. v. Mendelsohn, ante, at 386.
The prosecution offered two neutral bases for striking Mr. Brooks: his nervous demeanor and his stated concern about missing class. App. 444. The trial court, in rejecting *488 defendant’s Batson challenge, stated only “All right. I’m going [to] allow the challenge. I’m going to allow the challenge.” App. 445. The Court concedes that “the record does not show” whether the trial court made its determination based on Mr. Brooks’ demeanor or his concern for missing class, ante, at 479, but then speculates as to what the trial court might have thought about Mr. Brooks’ demeanor. As a result of that speculation, the Court concludes that it “cannot presume that the trial judge credited the prosecutor’s assertion that Mr. Brooks was nervous.” Ibid. Inexplicably, however, the Court concludes that it can presume that the trial court impermissibly relied on the prosecutor’s supposedly pretextual concern about Mr. Brooks’ teaching schedule, even though nothing in the record supports that interpretation over the one the Court rejects.
Indeed, if the record suggests anything, it is that the judge was more influenced by Mr. Brooks’ nervousness than by his concern for missing class. Following an exchange about whether his desire to get back to class would make Mr. Brooks more likely to support a verdict on a lesser included offense because it might avoid a penalty phase, defense counsel offered its primary rebuttal to the prosecutor’s proffered neutral reasons. Immediately after argument on the nervousness point, the judge ruled on the Batson challenge, even interrupting the prosecutor to do so:
“MR. VASQUEZ:... His main problem yesterday was the fact that he didn’t know if he would miss some teaching time as a student teacher. The clerk called the school and whoever it was and the Dean said that wouldn’t be a problem. He was told that this would go through the weekend, and he expressed that that was his only concern, that he didn’t have any other problems.
“As far as him looking nervous, hell, everybody out here looks nervous. I’m nervous.
“MR. OLINDE: Judge, it’s—
*489 “MR. VASQUEZ: Judge, that’s — You know.
“MR. OLINDE: —a question of this: It’s a peremptory-challenge. We need 12 out of 12 people. Mr. Brooks was very uncertain and very nervous looking and—
“THE COURT: All right. I’m going [to] allow the challenge. I’m going to allow the challenge.” App. 445.
Although this exchange is certainly not hard-and-fast evidence of the trial court’s reasoning, it undermines the Court’s presumption that the trial judge relied solely on Mr. Brooks’ concern for missing school.
The Court also concludes that the trial court’s determination lacked support in the record because the prosecutor failed to strike two other jurors with similar concerns. Ante, at 483-484. Those jurors, however, were never mentioned in the argument before the trial court, nor were they discussed in the filings or opinions on any of the three occasions this case was considered by the Louisiana Supreme Court.* Petitioner failed to suggest a comparison with those two jurors in his petition for certiorari, and apparently only discovered this “clear error” in the record when drafting his brief before this Court. We have no business overturning a conviction, years after the fact and after extensive intervening litigation, based on arguments not presented to the courts below. Cf. Miller-El v. Dretke, 545 U. S. 231, 283 (2005) (Thomas, J., dissenting).
Because I believe that the trial court did not clearly err in rejecting petitioner’s Batson challenge with respect to Mr. Brooks, I also must address the strike of Ms. Scott. The prosecution’s neutral explanation for striking Ms. Scott was *490 that she was unsure about her ability to impose the death penalty. Like the claims made about Mr. Brooks, there is very little in the record either to support or to undermine the prosecution’s asserted rationale for striking Ms. Scott. But the trial court had the benefit of observing the exchange between the prosecutor and Ms. Scott, and accordingly was in the best position to judge whether the prosecutor’s assessment of her response was credible. When asked if she could consider the death penalty, her first response was inaudible. App. 360. The trial court, with the benefit of contextual clues not apparent on a cold transcript, was better positioned to evaluate whether Ms. Scott was merely soft-spoken or seemed hesitant in her responses. Similarly, a firsthand observation of demeanor is the only thing that could give sufficient content to Ms. Scott’s ultimate response — “I think I could,” id., at 361 — to determine whether the prosecution’s concern about her willingness to impose the death penalty was well founded. Given the trial court’s expertise in making credibility determinations and its firsthand knowledge of the voir dire exchanges, it is entirely proper to defer to its judgment. Accordingly, I would affirm the judgment below.

While the Court correctly observes that the Louisiana Supreme Court made a comparison between Mr. Brooks and unstricken white jurors, that is true only as to jurors Vicki Chauffe, Michael Sandras, and Arthur Yeager. 1998-1078, pp. 15-18 (La. 9/6/06), 942 So. 2d 484, 495-496. The Court, on the other hand, focuses on Roland Laws and John Donnes, who were never discussed below in this context.